# In the United States Court of Federal Claims

|  |  |  |
|---|---|---|
| SUNDANCER POOLS, INC., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | No.  25-1291T |
| v. | ) | (Filed: June 23, 2026) |
| | ) | |
| THE UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Christina Tallulah Lanier, Brotman Law, San Diego, CA, with whom were Samuel David Brotman, Rojin Kayla Bijan, and Tara Nicole Pullano, for Plaintiff.

Charles J. Butler, Assistant Director, Tax Litigation Branch, Civil Division, U.S. Department of Justice, Washington, DC, with whom were Christopher Williamson, Assistant Director, Joshua Wu, Deputy Assistant Attorney General, and Brett Shumate, Assistant Attorney General, for Defendant.

## OPINION AND ORDER

**KAPLAN, Judge.**

On March 27, 2020, Congress passed the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), which provided financial assistance to individuals and businesses facing economic harm as a result of the COVID-19 pandemic. Pub. L. No. 116-136, 134 Stat. 281 (2020). One of the forms of financial assistance the CARES Act made available was the Employee Retention Credit ("ERC")—a refundable tax credit employers could apply against their employment taxes. Employers would be eligible for the credit when "the operation of the [employer's] trade or business . . . [was] fully or partially suspended during the calendar quarter due to orders from an appropriate governmental authority limiting commerce, travel, or group meetings . . . due to [COVID-19]." Id. § 2301, 134 Stat. at 348 (codified as amended at I.R.C. § 3134).

The plaintiff in this tax refund action, Sundancer Pools, Inc. ("Sundancer"), builds residential and commercial swimming pools and spas. At all times relevant to this case, Sundancer was incorporated in California and conducted its business operations in Southern California, primarily in San Diego County. Compl. ¶¶ 1, 18, ECF No. 1.

Sundancer filed Forms 941-X (Adjusted Employer's Quarterly Federal Tax Return or Claim for Refund) claiming entitlement to the ERC for the six quarters ending June 30, 2020, September 30, 2020, December 31, 2020, March 31, 2021, June 30, 2021, and September 30, 2021. Id. ¶ 79. The IRS recognized Sundancer's entitlement to the ERC for the first four of these quarters and issued refunds of employment taxes for those quarters. Id. ¶ 82. However, the IRS disallowed Sundancer's reliance on the credit for the second and third quarters of 2021. See Pl.'s Ex. E, ECF No. 1-6 (IRS letter disallowing claim). That disallowance decision prompted

Sundancer to file this lawsuit, seeking a refund of $660,292.61 plus interest based on the application of the ERC for the tax quarters ending June 30, 2021, and September 30, 2021. See Compl. at 17.[1]

The case is currently before the Court on the government's Motion for Judgment on the Pleadings. Def.'s Mot. J. on the Pleadings [hereinafter Def.'s Mot.], ECF No. 9. The government contends that—even accepting as true all of Sundancer's factual allegations—its complaint "does not allege facts demonstrating that it experienced a full or partial suspension of its business operations" during the second and third quarters of 2021 "or that any alleged suspension was the result of a government order." Id. at 1.

Sundancer, for its part, argues that the Court should deny the government's motion "[b]ecause there are genuine issues of fact regarding Sundancer's entitlement to the Employee Retention Credit for all quarters." Pl.'s Resp. in Opp'n to Def.'s Mot. at 1 [hereinafter Pl.'s Resp.], ECF No. 10. It also challenges the government's reliance on IRS Notice 2021-20, entitled "Guidance on the Employee Retention Credit under Section 2301 of the Coronavirus Aid, Relief, and Economic Security Act." Def.'s Ex. 3, ECF No. 9-3. Sundancer claims the government improperly treated as binding the provisions of the Notice interpreting the statutory phrase "eligible employer." Pl.'s Resp. at 1 (arguing that "subregulatory agency guidance" cannot entitle the government to "judgment as a matter of law").

For the reasons set forth below, the Court finds that the standard of review Sundancer endorses is incorrect. Where a defendant moves for judgment on the pleadings, a court applies the same standard to that motion as it would to a motion to dismiss under RCFC 12(b)(6). It assumes the allegations in a plaintiff's complaint to be true and then determines whether those allegations are sufficient to support the plaintiff's legal claims. As such, it is irrelevant whether the pleadings reflect the existence of any genuine issues of material fact.

Further, Sundancer misstates the nature of the government's reliance on the IRS guidance to support its legal arguments. The government has not argued that IRS Notice 2021-20 sets out binding interpretations of the governing statute. Rather, it cites the Notice as "a body of experience and informed judgment to which courts and litigants may properly resort for guidance." Loper Bright Enters. v. Raimondo, 603 U.S. 369, 394 (2024) (quoting Skidmore v. Swift & Co., 323 U.S. 134, 140 (1944)).

Finally, the Court agrees with the government that the factual allegations in Sundancer's current complaint, taken as true, do not establish that Sundancer's "trade or business . . . [was] fully or partially suspended" during the second and third quarters of 2021. Nor do they show that such a suspension was "due to [a government order] limiting commerce, travel, or group meetings . . . due to [COVID-19]." I.R.C. § 3134. The Court will nonetheless give Sundancer the opportunity to amend its complaint to address the concerns the Court expresses below.

---

[1] In its answer to Sundancer's complaint, the government asserted counterclaims to recover "erroneously refunded" money the IRS paid to Sundancer for the last three quarters of 2020 and the first quarter of 2021 as a result of the application of the ERC during those periods. See Answer & Countercl., ECF No. 6. At this stage in the proceedings, the government's counterclaims are not at issue.

**DISCUSSION[2]**

## I.    Standards for Motions for Judgment on the Pleadings

Under RCFC 12(c), parties may move for judgment on the pleadings "[a]fter the pleadings are closed." The court applies the same standard to a defendant's motion for judgment on the pleadings as it does to a motion to dismiss under RCFC 12(b)(6). See Cary v. United States, 552 F.3d 1373, 1376 (Fed. Cir. 2009) (citing Chang v. United States, 859 F.2d 893, 894 (Fed. Cir. 1988)); see also RCFC 12(h)(2) ("Failure to state a claim upon which relief can be granted . . . may be raised . . . by a motion under RCFC 12(c)) . . . ."). Under that standard, "each of the well-pled allegations in the complaints is assumed to be correct, and the court must indulge all reasonable inferences in favor of the plaintiffs." Atamirzayeva v. United States, 524 F.3d 1320, 1321 (Fed. Cir. 2008) (quoting Atlas Corp. v. United States, 895 F.2d 745, 749 (Fed. Cir. 1990)).

In its opposition to the present motion, Sundancer notes that the government's answer reveals genuine issues of material fact and contends that these factual disputes preclude judgment on the pleadings and require discovery. Pl.'s Resp. at 6–7, 10–12. Sundancer is incorrect. The standard it articulates applies when a plaintiff moves for judgment on the pleadings. E.g., N.Z. Lamb Co., Inc. v. United States, 40 F.3d 377, 380 (Fed. Cir. 1994) ("Judgment on the pleadings for a plaintiff is appropriate where there are no material facts in dispute and the plaintiff is entitled to judgment as a matter of law." (emphasis added)). Where, as here, a defendant moves for judgment on the pleadings, they must show that "the facts asserted by the claimant do not entitle him to a legal remedy." Lindsay v. United States, 295 F.3d 1252, 1257 (Fed. Cir. 2002). Therefore, a plaintiff is not required to establish the existence of genuine issues of material fact to survive a motion for judgment on the pleadings. Instead, it must show that its complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

## II.    The ERC Program

Under the CARES Act, employers who were carrying out a trade or business during calendar years 2020 and 2021 and who met the statutory eligibility requirements were entitled to

---

[2] The facts set forth in this opinion are based on the allegations in Sundancer's complaint, which the Court accepts as true for purposes of resolving the government's motion. The Court has also considered the IRS guidance attached to Sundancer's complaint, as well as the government orders Sundancer referenced in its complaint. See Rocky Mountain Helium, LLC v. United States, 841 F.3d 1320, 1325 (Fed. Cir. 2016) (quoting Tellabs, Inc. v. Makor Issues & Rts., Ltd., 551 U.S. 308, 322 (2007) ("[C]ourts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.")).

receive a credit against their quarterly employment tax liability. I.R.C. § 3134.[3] Sundancer alleges that it was eligible to receive ERCs in the second and third quarters of 2021 on the grounds that the "operation of [its] trade or business . . . [was] fully or partially suspended" during those quarters "due to orders from an appropriate governmental authority limiting commerce, travel, or group meetings . . . due to [COVID-19]." I.R.C. § 3134(c)(2)(A)(ii)(I).[4] However, the facts alleged in its complaint are insufficient to establish that Sundancer's operations were "fully or partially suspended" within the meaning of the statute during the two quarters at issue. Nor do they show that any such suspension was "due to" a relevant government order.

### A.    "Fully or Partially Suspended"

The CARES Act does not include a definition of the phrase "fully or partially suspended." The Court must therefore interpret it in accordance with its "ordinary, contemporary, common meaning." N.Y. & Presbyterian Hosp. v. United States, 881 F.3d 877, 882 (Fed. Cir. 2018) (quoting Sandifer v. U.S. Steel Corp., 571 U.S. 220, 227 (2014)).

Black's Law Dictionary defines the word "suspend" as "[t]o interrupt; postpone; [or] defer." Suspend, Black's Law Dictionary (12th ed. 2024). The word "partial" is defined as "[n]ot complete; of, relating to, or involving only a part rather than the whole." Partial, Black's Law Dictionary (12th ed. 2024). Similarly, Merriam-Webster defines "suspend," in relevant part, as "to cause to stop temporarily," "to defer to a later time on specified conditions," or "to hold in an undetermined or undecided state awaiting further information." Suspend, Merriam-Webster, https://www.merriam-webster.com/dictionary/suspend. It defines "partial" as "of or relating to a part rather than the whole: not general or total." Partial, Merriam-Webster, https://www.merriam-webster.com/dictionary/partial.

The Court also takes into consideration the interpretation of the phrase "partially suspended" contained in IRS Notice 2021-20. See Loper Bright, 603 U.S. at 394 (holding an agency's interpretation of law may constitute "a body of experience and informed judgment to which courts and litigants may properly resort for guidance" (quoting Skidmore, 323 U.S. at 140)). That Notice provides that where an employer's workplace is closed for some purposes but remains open for others, "the employer's operations would be considered to be partially suspended if, under the facts and circumstances, the operations that are closed are more than a

---

[3] In 2021, that credit would generally be equal to 70% of up to $10,000 of the qualified wages an eligible employer paid to each employee per quarter. I.R.C. § 3134(a), (b)(1).

[4] In addition, employers were eligible for the ERC where they experienced a specified percentage "decline in gross receipts" in 2020 or 2021, as compared to their gross receipts for 2019. I.R.C. § 3134(c)(2)(A)(ii)(II). Employers were also eligible for the ERC where they qualified as a "recovery startup business" under I.R.C. § 3134(c)(2)(A)(ii)(III) and (c)(5). Sundancer does not allege that it was an eligible employer on either of these bases.

4

nominal portion of its business operations and cannot be performed remotely in a comparable manner." Def.'s Ex. 3, at 34 (Q/A 17).[5]

The guidance also advises that "[t]he mere fact that an employer must make a modification to business operations due to a governmental order does not result in a partial suspension unless the modification has more than a nominal effect on . . . an employer's ability to provide goods or services in the normal course of the employer's business." Id. at 39 (Q/A 18). Indeed, all businesses were required to modify their workplace practices and working conditions to some extent during the pandemic. Therefore, Congress must have required that—to establish its eligibility for the ERC—an employer must demonstrate something more than that its normal operations were disrupted by implementing such modifications. See In re JSmith Civil, LLC, 674 B.R. 207, 213 (Bankr. E.D.N.C. 2025) (interpreting ERC eligibility criteria narrowly in part because it is a "presumption-out" statute).

Further, an employer cannot establish it experienced a "suspension" simply by showing that it lost revenue as a consequence of having to comply with the government orders. Lost revenue supplies an independent basis for establishing an employer's eligibility for the ERC. I.R.C. § 3134(c)(2)(A)(ii)(II).

In short, the ordinary meaning of a "partial suspension" of "the operation of [a] trade or business" is a temporary interruption, postponement, or cessation of a more than nominal portion of a business's operations. Accord JSmith, 674 B.R. at 214 ("A 'partial suspension,' then is a temporary stoppage of a portion of operations."). And a "full suspension" is a temporary interruption, postponement, or cessation of all operations.

## B.    "Due To" a Government Order

As noted, to establish its eligibility for an ERC, an employer must show that any full or partial suspension of its operations was "due to" a qualified government order. I.R.C. § 3134(c)(2)(A)(ii)(I). The phrase "due to" is not defined in the CARES Act. The plain meaning of the phrase "due to" is "because of." See Due to, Merriam-Webster, https://www.merriam-webster.com/dictionary/due%20to. However, the phrase is ambiguous with respect to the precise nature of the causal relationship the Act requires between the government order and the suspension of operations. See, e.g., Easom v. US Well Servs. Inc., 37 F.4th 238, 245 n.2 (5th Cir. 2022) (collecting cases which determined "due to" is ambiguous).

The Court agrees with the reasoning of Judge Bonilla in Northeast Health Services v. United States that the phrase "due to" in the context of this statute is best read as requiring a showing that "a qualifying governmental order was both the factual and proximate cause of a full or partial suspension." No. 24-2096T, 2026 WL 1530240, at *11 (May 28, 2026); see also JPM Restaurant, LLC v. United States, No. 24-cv-357, 2026 WL 561147, at *5 (E.D. Tenn. Feb. 27,

---

[5] In its Notice, the IRS stated that it would deem a portion of an employer's business operations to be more than nominal if (1) it contributed "not less than 10 percent of the total gross receipts" of the business or (2) if "the hours of service performed by employees in that portion of the business is not less than 10 percent of the total number of hours of service performed by all employees in the employer's business." Def.'s Ex. 3, at 28 (Q/A 11).

2026) (holding that "'due to' requires both factual and proximate causation—meaning that the order must have been the 'but-for' cause and a foreseeable cause of the full or partial shutdown"). As Judge Bonilla explained, "context requires proximate causation" because "[i]nterpreting 'due to' to require only but-for causation would not conform to the broader statutory scheme." Ne. Health Servs., 2026 WL 1530240, at *9. In particular, a 'but-for' causation standard would risk "broaden[ing] the suspension-of-business prong such that employers could virtually always rely on it and would almost never have to rely on the decline-in-receipts prong." Id. at *11. "An interpretation that permits one qualification requirement to supersede an alternative qualification requirement must be rejected." Id. at *9 (citing Yates v. United States, 574 U.S. 528, 543 (2015)).

### III.    Sundancer's Allegations

In its complaint, Sundancer alleges that "[b]etween March 12, 2020, and September 30, 2021, several binding orders issued by California, San Diego and Los Angeles counties, and the cities of San Diego and Los Angeles, as well as their respective subdivisions [], significantly limited commerce in ways relevant to Plaintiff." Compl. ¶ 24. The complaint devotes nine pages to descriptions of these "Relevant Government Orders." Id. ¶¶ 24–64. Included among them are Executive Orders issued by the Governor of California as well as a variety of other directives and public health issuances prepared and disseminated during the pandemic. Id.

Most orders mentioned in the complaint concern the implementation of protocols for avoiding the spread of COVID-19 at the workplace.[6] These mandated modifications included social distancing, masking, and sanitation requirements, as well as testing and reporting mandates. See id. Sundancer alleges these requirements "more than nominally impacted" its "ability to provide its pool and spa building services" to commercial and residential consumers. Id. ¶ 65.

However, the allegations that specifically purport to describe the impact of these orders on Sundancer's operations do not include facts showing that during the quarters in question, Sundancer temporarily ceased or stopped its operations in whole or in part or that government orders were the proximate cause of any such cessation of operations. For example, Sundancer alleges generally that its compliance with social distancing requirements "affected its ability to adequately staff its construction sites" which in turn "decreased the efficiency and timeliness" of its work. Id. ¶ 67. But Sundancer cannot establish its eligibility for an ERC on the basis of a decrease in efficiency and timeliness that occurred because of COVID-related social distancing requirements. Sundancer must show that the social distancing requirements were the proximate cause of a temporary interruption, postponement, or cessation of a more than nominal portion of its operations. And it must show that the suspension occurred during the second and third quarters of 2021.

The complaint also alleges that Sundancer "encountered difficulties obtaining necessary permits because the Relevant Government Orders caused the government offices that issue such

---

[6] The complaint references a few stay-at-home orders that applied to nonessential businesses. E.g., Compl. ¶¶ 27, 36. However, Sundancer does not allege that it was a non-essential business or that these orders were in place during the second and third quarters of 2021.

permits to operate at reduced capacity." Id. ¶ 68. Sundancer claims that "[p]rior to the Relevant Governmental Orders, building permits were often processed within two to three weeks" but "in 2020 and 2021, a building permit could take as long as six months to obtain." Id. According to Sundancer, this increased processing time "reduced [its] efficiency and operational capacity." Id. But even assuming that it took longer for Sundancer to secure building permits because of staffing shortages, its allegations of reduced efficiency and capacity are vague, and Sundancer does not provide facts showing that the delays in securing permits caused it to temporarily cease performing a distinct portion of its business. It also fails to allege that these effects occurred during the relevant quarters of 2021.

Sundancer also complains about "supply chain restrictions." Id. ¶¶ 70–76. It claims that in response to such restrictions, "pool equipment manufacturing ceased," creating equipment shortages which "forced [it] to temporarily switch vendors," "hampered operations[,] and caused project delays." Id. ¶ 71. But Sundancer does not allege that a government order was the proximate cause of these "supply chain restrictions," the resulting cessation of manufacturing, or the tertiary effects on its business. Nor does it allege facts showing that these "project delays" resulted in a temporary stoppage of a more than nominal portion of its operations. In fact, the complaint acknowledges that—out of necessity—Sundancer developed workarounds that allowed it to continue to operate, notwithstanding the supply chain issues. Id. ¶ 71.[7]

Similarly, Sundancer alleges that "a severe shortage of concrete [] posed one of the earliest and most significant challenges" during the pandemic. Id. ¶ 73. It elaborates that "[t]he closure of a Southern California concrete plant caused weeks-long delays" which continued "even after operations resumed." Id. It also alleges there were shortages in and only "sporadic availability" of PVC piping, steel, lumber, plaster, chlorine, automation systems, and other supplies, as well as increased costs and extended delays in availability. Id. ¶¶ 72–74. Sundancer contends it "made operational adjustments, including changing vendors and revising project timelines," but "the cumulative impact of these challenges persisted well into 2022." Id. ¶ 74.

But again, Sundancer does not assert that the closure of the concrete plant and the shortage of needed materials were caused by any particular government order as opposed to the effects of the pandemic on the world and national economies. And Sundancer makes no allegation that these shortages caused it to temporarily cease any part of its business operations during the relevant time period.

The Court notes that in its response to the government's motion, Sundancer claims that the complaint alleges governmental orders "shut down its job sites." Pl.'s Resp. at 7; see also id. at 8 ("Because of the Orders' restrictions on Sundancer and its suppliers, Sundancer's jobsites often were closed, delayed, or heavily restricted during its working hours."). But the complaint

---

[7] IRS Notice 2021-20 acknowledges that a suspension of an employer's supplier's business can constitute a suspension of the employer's business, but only if the employer's "operations are fully or partially suspended as a result of the inability to obtain critical goods or materials from its suppliers" and not if the employer obtains critical goods or materials from elsewhere. Def.'s Ex. 3, at 28 (Q/A 12). In such a case, even if the employer experienced higher costs in obtaining critical goods, no portion of its business operations would have ceased, and its operations would not have been suspended.

contains no mention of any of Sundancer's job sites that were "shut down" or "closed." Moreover, Sundancer does not cite facts in the complaint showing that these newly-mentioned job site shutdowns occurred due to a government order during the relevant quarters of 2021 nor that the shutdowns affected a more than nominal portion of its operations.

Finally, Sundancer alleges it "was also forced to reallocate its resources that would have otherwise been dedicated to serving its clients to comply[] with heightened cleaning and other COVID-19 protocols." Compl. ¶ 69. It says that these requirements "cut into its profits." Id. But Sundancer fails to link the increased costs it incurred to any suspension of its business.

In short, the allegations in Sundancer's complaint, taken as true, show that in 2020 and 2021, Sundancer had to make changes in the way it operated its business because of the requirements set forth in government orders and to respond to the impact of COVID-19 on the economy. In some instances, its costs were increased and profits diminished. But as they currently stand, the allegations are insufficient to establish that Sundancer's operations were suspended, in whole or in part, during the operative periods, or that any such suspensions were proximately caused by the government orders to which it was subject.

## **CONCLUSION**

In its opposition, Sundancer requests that the Court either deny the government's motion or that it give Sundancer an opportunity to file an amended complaint. Pl.'s Resp. at 16. The Court is not prepared to deny the government's motion because, as explained above, as currently drafted Sundancer's complaint does not allege facts sufficient to show that its operations were either partially or fully suspended during the second and third quarters of 2021 due to a qualifying government order.

The Court, however, will give Sundancer the opportunity it has requested to move to amend its complaint to address the concerns expressed in the government's motion and in this opinion. Sundancer shall file any such motion, along with a proposed amended complaint, no later than **July 23, 2026**. Until such time, the Court **DEFERS** ruling on the Motion for Judgment on the Pleadings, ECF No. 9.

**IT IS SO ORDERED.**

s/ Elaine D. Kaplan
ELAINE D. KAPLAN
Judge

8